JOSTENS, INC., Appellant,

v.

Lewis GILCREASE, Norman Oliver
Deike and D. Andrew Buffington,
Appellees.

No. 3–89–237–CV.

Court of Appeals of Texas,
Austin.

Oct. 10, 1990.

Rehearing Overruled Dec. 19, 1990.

Jo Chris G. Lopez, Shaddox, Compere,
Gorham & Good, P.C., San Antonio, for
appellant.

Fay C. Gillham, Austin, for Lewis Gil-
crease.

Carroll J. Bryla, Bryla & Schoessow,
Fredericksburg, for Norman Oliver Deike.

Tim G. Sralla, Fielding, Barrett & Taylor,
Fort Worth, for D. Andrew Buffington.

Before POWERS, CARROLL and
SMITH *, JJ.

POWERS, Justice.

Josten's, Inc. appeals from a summary
judgment rendered by the trial court in
Josten's suit against Lewis Gilcrease, Nor-
man Oliver Deike, and B. Andrew Buffing-
ton. We will reverse the judgment and
remand the cause to the trial court.

### THE CONTROVERSY

Josten's employed Buffington to sell var-
ious kinds of rings manufactured by the
company. In 1980, a dispute arose be-
tween them, and Josten's terminated Buff-
ington's employment. He sued Josten's in
a district court in Nueces County. Josten's
filed a counterclaim. They ultimately en-
tered into a contract of settlement and com-
promise upon which the trial court ren-
dered an agreed judgment. The judgment
recites as its basis the making of the con-
tract of settlement and compromise, and
orders that the parties take nothing by

---

* Before Earl W. Smith, Justice (retired), Third
Court of Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003 (1988).

their respective claims. The judgment is final.

Before the parties entered into the contract of compromise and settlement, Buffington represented to Josten's that he had lost 10 particular rings—"Super Bowl Rings" in the parties' usage—that the company had supplied him for use as samples. Buffington contends he found the rings shortly after the district court of Nueces County rendered judgment on the contract of settlement and compromise. He and Gilcrease began then to market the rings, selling one ("the Dallas Cowboys Roger Staubach Championship Ring") to Deike.

Josten's sued in the present cause to recover the 10 rings. Buffington claims title to the rings under the Nueces County judgment and the following provision in the contract of settlement and compromise upon which that judgment rests:

> Josten's agrees that Buffington may retain all dies, *rings* (high school, college and *championship*), marketing aides [sic], displays, merchandising aides [sic], samples, books, and *any materials acquired during his association with Josten's* or acquired during the pendency of the [Nueces County] lawsuit or in his possession and Josten's hereby waives forever any claims it has or may have had to all of these items.

(Emphasis added.)

In a fourth amended original petition, Josten's alleged that Buffington converted the rings after acquiring possession of them "using false pretenses, and false representations that the rings were permanently lost or stolen"; that Gilcrease and Deike knew or should have known the rings were lost or stolen and that Buffington had in consequence no title to convey; and, alternatively, that any written instrument under which the defendants claimed title should be reformed owing to mutual mistake or that such instrument was ambiguous and should be construed as not transferring title from Josten's to Buffington insofar as the "lost" or "stolen" rings were concerned. These alternative allegations refer to the contract of settlement and compromise made in the first suit.

Josten's prayed for a determination of title to the rings and for possession of them; for reformation of the contract of settlement and compromise based on fraud or mutual mistake; and for attorney's fees.

Gilcrease, Deike, and Buffington pleaded in answer several affirmative defenses: estoppel, res judicata, waiver, and laches. Buffington alleged a counterclaim against Josten's, praying for a declaratory judgment as to the ownership of the rings; for money damages for Josten's interference with Buffington's contract with Gilcrease and the sale to Deike; and for money damages based upon Josten's breach of the contract of settlement and compromise in the first suit. Gilcrease apparently filed a counterclaim as well, but his allegations in that regard are not contained in the appellate record. It appears from the record that Deike did not file a counterclaim.

## THE SUMMARY JUDGMENT

Buffington, Gilcrease, and Deike moved for summary judgment based on their affirmative defenses to Josten's claims. Buffington prayed for judgment that Josten's take nothing; for declaratory judgment that Buffington "is in true and rightful possession" of the rings; and that his counterclaim be severed from the claims made by Josten's. Gilcrease prayed that Josten's take nothing and for declaratory judgment that he is "in lawful possession of the rings." Deike prayed that Josten's take nothing and for a declaratory judgment that Deike owned "the Dallas Cowboy's Roger Staubach Championship ring."

In a document entitled "Order Granting Partial Summary Judgment," the trial court rendered summary judgment on the three motions mentioned in the preceding paragraph. The document reads in part:

> The Court, after examining the pleadings and the summary judgment evidence of all moving parties and hearing the arguments of counsel, is of the opinion and finds that the following facts exist without substantial controversy and that Defendants Lewis Gilcrease, Norman Oliver Deike, and D. Andrew Buffington, are

entitled to summary judgment as follows:

The remainder of the document adjudges that "Deike is the true and rightful owner" of the ring he purchased from Buffington and Gilcrease; that "Gilcrease is in true and rightful possession of" the remaining rings; that "Buffington is the true and rightful owner of" the remaining rings; that Josten's "has no right, title, or interest in" the rings; and that the counterclaims brought by Buffington, Gilcrease, and Deike are severed from Josten's claims against them.

The summary judgment is irregular in several respects: (1) the document declares that the court had examined "the pleadings and the summary judgment evidence *of all moving parties*," which raises the question of whether the court properly based its judgment on the items mentioned in Tex.R. Civ.P.Ann. 166–A(c) (Supp.1990), that is to say, upon the whole summary-judgment record as required by that rule; (2) the document declares that the judgment is based upon the court's finding "that the *following* facts exist without substantial controversy," but no such facts are listed thereafter; and (3) the document does *not* declare that the movants are entitled to judgment as a matter of law. Nevertheless, Josten's does not complain on appeal concerning these matters.

Josten's complains rather that the documents attached to its opponents' motions for summary judgment lacked the formalities required by Tex.R.Civ.P.Ann. 166–A(e) (Supp.1990); that the affirmative defense of res judicata was not supported by the required certified copies of the petition and judgment in the first suit, attached to the motions, as required by the rule mentioned in *Chandler v. Carnes Co.*, 604 S.W.2d 485 (Tex.Civ.App. 1980, writ ref'd n.r.e.); and that genuine issues of material fact precluded summary judgment. The last-named contention depends upon the legal

effect of the contract of settlement and compromise, and the agreed judgment rendered thereon in Nueces County. The parties join issue primarily on this contention, and because we believe the trial court erred in the legal effect it must have assigned those documents from the first suit in order to render the summary judgment, we will discuss only that contention in reversing the trial-court judgment.[1]

## DISCUSSION AND HOLDINGS

■ The only permissible interpretation of the summary judgment, in light of the record, is that the court sustained the movants' plea of res judicata. No other ground set out in the summary-judgment motions would support a judgment that vests title to the rings in the movants as a matter of law. Josten's contends on appeal that the summary-judgment record does not show that Buffington, Gilcrease, and Deike acquired title to the rings, as a matter of law, by reason of the final judgment in the first suit.[2] We agree.

The scope and effect of the Nueces County judgment is the same as the contract of settlement and compromise. The terms of that judgment purport no greater or different effect. We need therefore speak only in terms of the contract of settlement and compromise.

The parties concede that a binding contract was made. They differ, however, as to whether the terms of the contract include the Super Bowl Rings. Josten's alleged the Super Bowl Rings were excluded from the scope of the contract because Buffington represented before the contract was made, and Josten's believed his representation, that the rings were lost or stolen; and, Josten's alleged, it learned thereafter that Buffington knew his representation was false when he made it. Buffington concedes the representation but contends it was true when made. He contends

1. For the general rules governing the appellate review of summary judgments, *see Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex. 1985); *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975).

2. For convenience we shall refer only to Buffington hereafter in discussing ownership of the rings. It is undisputed that Deike and Gilcrease claim a title or right of possession only under Buffington.

that he believed the rings were lost, but found them shortly after the entry of the agreed judgment in Nueces County. Assuming in support of the judgment the truth of Buffington's claim that his representation was true when made, then the summary-judgment record becomes undisputed on the point that both he and Josten's believed the rings to be lost or stolen when they made their contract of settlement and compromise.

From the foregoing, Josten's argues that the rings fell outside the contractual intentions of the parties as a matter of law, and that Buffington could not acquire title to the rings by virtue of the contract and resulting judgment. (Buffington claims title by reason of the contract alone, and not as a finder of "lost property"). Buffington responds that the parties' pre-contract understanding is immaterial because the contract is *unambiguous* in awarding Buffington all articles he had in his possession or that he acquired during his association with the company. The parol-evidence rule therefore precludes Josten's from varying the contract description by extrinsic evidence of the pre-contract representation and understanding, and this is the effect of that rule even though *both* parties thought at the time of contracting that the Super Bowl Rings were lost or stolen.

We assume the contract was unambiguous relative to the articles Buffington "acquired during his association with Josten's." This does not mean, however, that the trial court was bound by the parol-evidence rule to deny legal effect to the undisputed fact that both contracting parties (Josten's and Buffington) thought the rings were lost or stolen when they made the contract and agreed to a judgment thereon.

■ The contract language was not specific in reference to the rings. The contract did *not* state, for example, that the Super Bowl Rings were lost and Buffington should have title to them if ever they were found. The contract was not "unambiguous" in that sense. Rather, the contract vested Buffington with title to *unspecified* articles coming fairly within the *classes* of certain items described in the

contract, to the extent the articles were "acquired during his association with Josten's." In applying the parol-evidence rule in such a case, one reasons from the premise stated in *Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971):

> [T]he words of a legal instrument are simply indices to external things, and words always need interpretation. It is always necessary to determine their association with external objects, and *all circumstances should be considered that go to make clear the sense in which they were used, i.e., their association with things....*

(Emphasis added.) *See also Ft. Worth Nat. Bank v. Red River Nat. Bank,* 84 Tex. 369, 19 S.W. 517, 518 (1892) ("Written descriptions are to be interpreted in the light of the facts known to and in the minds of the parties at the time. They are not prepared for strangers, but for those they are to affect,—the parties and their privies."); *Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941) ("It is true that, even though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject with which it deals.... [This] merely permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed."); 2 Ray, Texas Law of Evidence § 1684, p. 410 (3d ed.1980) ("One of the most frequent and obviously necessary types of interpretative evidence is that which is offered to identify the chattels ... or other subject matter of the transaction.").

The entire matter of construing *unambiguous* contract language "in the light of the surrounding circumstances," was discussed pointedly and at length in *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 517–19 (Tex.1968). After agreeing "with the parties that the contractual provisions ... [were] unambiguous," the court quoted with approval the following passage from the Restatement of Contracts § 230 (1932):

> [The] standard of interpretation of an integration, except where it produces an

ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and *knowing all the circumstances prior to and contemporaneous with the making of the integration,* other than oral statements by the parties of what they intended it to mean.

(Emphasis added.) *See also* 4 Williston on Contracts § 609A, pp. 422–55 (3d ed.1961); Restatement of Contracts 2d § 201 (1981).

Therefore, the understanding of the contracting parties—their mutual belief at the time of contracting that the Super Bowl Rings were lost or stolen—was an operative fact essential to arrive at the meaning they intended in the contract language they chose to describe the articles that should belong thereafter to Buffington. The operative fact is undisputed. Under the decisions and other authorities cited above, the parol-evidence rule did not preclude giving legal effect to the undisputed fact on a theory that the contract was unambiguous.

Since the operative fact is undisputed, we hold the trial court erred in its summary judgment, awarding title to the rings to Buffington and those in privity with him (Gilcrease and Deike) as a matter of law, on their plea of res judicata based upon the judgment in the Nueces County suit. That suit could not have adjudicated title in Buffington because, as a matter of undisputed fact, the 10 Super Bowl Rings were not within the contract of settlement and compromise upon which that judgments rests. We hold accordingly.

Because our holding requires a reversal of the summary judgment on the sole ground upon which it might have been rendered, we need not consider Josten's remaining points of error.

We reverse the trial-court judgment and remand the cause to that court for proceedings not inconsistent with our opinion.