**Alminta B. GROSCHKE, W.C. Groschke, Jr., and Mark A. Groschke, Appellants,**

**v.**

**Frank A. GABRIEL, Jr. and Cynthia Gabriel, Appellees.**

**Nos. 01–91–00350–CV, 01–91–00374–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 1991.

Rehearing Denied Jan. 2, 1992.

Karl C. Hoppess, Daniel P. Meanor, Houston, for appellants.

Annie Fabio, Houston, Kenneth Keeling, Huntsville, John R. Bankhead, Mandison-ville, for appellees.

Before SAM BASS, O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

In an accelerated appeal,[1] appellants contest the summary judgment rendered in favor of the appellees, and the denial of the appellants' motion for summary judgment. The parties stipulated to the facts and documents and formulated the issues presented to the trial judge for decision. The dispute in the trial court, and on appeal, relates to the legal obligations of the parties arising from the stipulations. We affirm.

In 1973, the appellees, Frank and Cynthia Gabriel (the Gabriels), husband and wife, purchased 450.234 acres of land in Grimes County, Texas, from A.B. Ingram and his wife, Mary Ann Ingram, and signed a promissory note for $430,000. On January 16, 1984, the appellants, Alminta B. Groschke and her sons, W.C. Groschke, Jr., and Mark A. Groschke (the Groschkes), entered into an agreement to purchase 295.-001 acres of land from the Gabriels for $671,123.20. The agreement utilized financing known as a "wraparound" vendor's lien in a general warranty deed and deed of trust. This allowed the preexisting lien on the property (the Ingram note) to be covered by, but not subordinated to, the subsequent lien to the Gabriels.

The Gabriels executed a general warranty deed to trustee Jay Roy Atchley, for the 295.001 acres of land. Atchley, as trustee, executed a nonpersonal liability "wraparound" promissory note for the principal sum of $671,123.20 (the Gabriel note), payable to the Gabriels, as consideration for the general warranty deed. The Gabriel note was also secured by a deed of trust issued to John M. Fultz, trustee. The general warranty deed and the deed of trust expressly stated the lien was secondary and inferior to the Ingram note. The documents provided that the only recourse available to the Gabriels was repossession of the land, leaving the Groschkes without liability for any deficiency. Atchley then executed an exchange deed to the Groschkes.

The Gabriel note and lien were also made subject to partial release provisions in the deed of trust and the general warranty deed.[2] The partial release provisions gave

---

1. Tex.R.App.P. 42(b).

2. The partial release provisions read as follows: PARTIAL RELEASE PROVISIONS: It is further expressly covenanted and agreed by Grantors [the Gabriels], for themselves, their heirs and assigns, that the liens securing the payment of the herein described $671,123.20 Non–Personal Liability Note executed by the Grantee and given by him as part of the consideration for the purchase of the herein described property, shall be subject to the right of Grantee, his successors and assigns, to obtain partial releases from said liens, so long as Grantee is not in default in the payment of said $671,123.20 Note and PROVIDED FURTHER that the $430,000.00 "Wraparound Note" has been paid in full in accordance with its terms and the terms of said $671,123.20 Note, and the liens securing said "Wraparound Note" have been fully and finally released without any additional consideration therefor,

Atchley the right to obtain clear title to six acres of the land, so long as all the requirements contained in the partial release provisions were met. The requirements included no default in the Gabriel note, full payment of the Ingram note, and full and final release of the lien created by the Ingram note. There were also other restrictions as to what portions of the land would be chosen subject to the release provisions, but they are not germane to the dispute.

The Groschkes used the 295.001 acres as a homestead and ranch, but, in 1985, filed a homestead exemption for "home only." Their payments on the 295.001 acres were 10 equal, annual payments of $109,222.21, payable on or before January 16 of each year, beginning in 1985 and continuing until 1995. The note allowed for prepayment, without penalty or premium.

On January 16, 1989, the Groschkes did not make their payment. After a series of negotiations, the Gabriels agreed to accept payment of the interest only, with the principal to be paid on or before January 16, 1990. The Groschkes paid $53,062.84, the amount of the interest due plus a penalty, and $300 for the Gabriels' attorney's fees. Upon receipt of the payment, the Gabriels' attorney sent the Groschkes a letter indicating the trustee's sale would not be held as scheduled. There was no written extension agreement in the record, and nothing to indicate the default had been forgiven.

On December 22, 1989, the Groschkes' attorney, as trustee for the Groschkes, bought the Ingram note for the outstanding balance of $89,000, and received executed release of liens and transfer of liens from the Ingrams. The Ingrams indicated on the note that the Gabriels were current on their payments as of the date of the sale of the note, and that the next payment was due June 1, 1990.

On January 10, 1990, the Groschkes' attorney sent a demand letter to the Gabriels, requesting execution of the partial releases. The Gabriels refused to execute the releases claiming the conditions precedent to execution of the releases had not been fulfilled. When January 16, 1990, arrived, the Groschkes did not pay the principal due from 1989, nor make any further payments on the property. In June of 1990, the Gabriels timely paid the $20,000 due on the Ingram note into a separate, interest bearing escrow account.

In July of 1990, the Gabriels foreclosed on 289 acres of the 295.001 acres. This foreclosure was not contested by the appellants. On or about April 23, 1990, the Groschkes filed suit against the Gabriels for refusing to release the six acres, and obtained a temporary injunction against foreclosure on the six acres. The Gabriels filed counterclaims against the Groschkes and their attorney. Both sides filed motions for summary judgment claiming no material facts were in dispute. The trial court granted the Gabriels' summary judgment motion, entered a nonsuit filed by the Gabriels as to the Groschkes' attorney, and denied the Groschkes' motion for summary judgment.

The Groschkes filed an amended petition after the trial court granted the Gabriels' summary judgment, but before a final judgment was signed. The petition raised

---

which partial releases shall be granted under the following terms and conditions and none other:

a. Not more than a total of three (3) individual and separate tracts may be released from the liens securing said $671,123.20 Note;

b. Each such tract shall contain a maximum total of 2.00 acres, for a maximum total of 6 acres subject to the terms hereof;

c. Grantee, his successors and assigns, shall have the sole option and right to determine the size, up to a maximum of 2.00 acres as provided above, the location within the tract herein conveyed and the shape of each tract to be released;

d. No tract to be released in accordance with these provisions shall in fact deny, or have the effect of denying, access to any portion of the herein described property remaining unreleased;

e. Grantor, their heirs and assigns, shall, in addition to partially releasing the three (3) tracts herein provided, release and/or subordinate the liens securing the herein described $671,123.20 Note to an easement to each tract, which easement shall be fifteen (15) feet in width and which easement shall provide the potential for ingress and egress to the public road lying to the west of the herein described real property.

new causes of action based on fraud, constructive fraud, and tortious interference with the Groschkes' attorney's practice of law. The docket sheet indicates a telephone conversation was held between the judge and the attorneys for both sides, discussing the implications and ramifications of the amended petition. The Gabriels filed a motion to sever the new causes of action alleged in the amended petition from those before the court in the summary judgment, and the trial court granted the motion. The final judgment, entered on February 22, 1991, states "no matters exist which have not been disposed of," grants the Gabriels the right to proceed with foreclosure on the six acres, awards attorney's fees and payment of the injunction bond as part of the attorney's fees awarded, releases the June 1, 1990, payment on the Ingram note to the Groschkes, and orders the Gabriels to continue payments to the Groschkes until the Ingram note is paid in full.

To uphold a summary judgment, the reviewing court must examine the record and determine that the movant has met his burden of showing no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985). On review, the question is not necessarily whether the non-movant raised a material fact issue to defeat the motion, but rather to determine whether the movant proved his entitlement to summary judgment as a matter of law, i.e. by proving all elements of a cause of action or a defense. *MMP Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); Tex.R.Civ.P. 166–A. The burden of proof is on the movant, all doubts as to the existence of a material fact are resolved against him, and evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). In viewing the evidence in the light most favorable to the non-movant, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accept-

ed as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

The Groschkes' first point of error asserts that the trial court erred in granting the motion for summary judgment. Appellants may therefore attack all grounds set forth in the motion for summary judgment. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119 (Tex.1970). The grounds set forth in the Gabriels' motion for summary judgment all indicated none of the required conditions precedent, necessary to entitle the Groschkes to the execution of the release of the six acres, had occurred. Therefore, the Groschkes were not excused from making the payments on the Gabriel note, the Groschkes had defaulted, and the Gabriels were entitled to accelerate and foreclose, according to the terms of the warranty deed, deed of trust, and the promissory note. Specifically, the Gabriels asserted that the Groschkes were in default on the Gabriel note; the Groschkes' purchase of the Ingram note did not comply with the requirement the note be paid in full in accordance with its terms; and, because the release of lien executed by the Ingrams was not recorded, and the note had not been marked "paid in full" across its face, the lien securing the Ingram note was not fully and finally released. The Groschkes contend the evidence before the trial court proved the Gabriel note was not in default or that an issue of material fact existed regarding whether the note was in default.

Where the summary judgment evidence establishes that the appellee is the holder of the promissory note, the note was in default, the appellant was the maker of the note, and the appellant does not deny the genuineness of his signature or the endorsement, and does not plead payment, the appellee is entitled to recover, unless the appellant establishes a defense. *Whittenburg v. Cessna Fin. Corp.*, 536 S.W.2d 444, 445 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Hemphill v. Greater Houston Bank*, 537 S.W.2d 124, 125 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ); Tex.Bus. & Com.Code Ann. § 3.307(a), (b) (Vernon 1968).

The evidence before the trial court included the warranty deed, the deed of trust, and the promissory note; the exchange deed between Atchley and the Groschkes; and the March 2, 1989 letter from the Gabriels' attorney, accepting the payment of interest only, extending the time for the payment of the principal for up to one year, and reserving the right to proceed with foreclosure. The Groschkes did not deny their signatures or offer any defense to the nonpayment of the note. The Gabriels' burden, at that point, was to show that the Groschkes had not established a cause of action against them or that they had a defense for their failure to execute the partial releases. We find the summary judgment evidence established that the conditions required to give rise to the Gabriels' duty to execute the partial releases had not occurred.

To render summary judgment for the Gabriels, the trial court had to determine what events would give rise to the Gabriels' duty to execute the releases. To make that determination, the trial court had to construe the agreement between the parties. The applicable rules for interpretation of written contracts are as follows:

the primary concern of the courts is to ascertain and give effect to the intentions of the parties as expressed by the instrument. *To achieve this object the Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless.* If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous.

*R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518–19 (Tex. 1980) (citations omitted) (emphasis added).

In this case the deed of trust, the warranty deed, the promissory note, and the exchange deed, are construed together because they are all part of the "contract." When the entire contract is considered in a manner that gives meaning to all its provisions, it has a certain, definite meaning. The trial court found that the Gabriels were required to sign a release of the six acres once the Ingram note was paid in full and there was a full and final release of all their liability on the note, so long as the Groschkes were not in default on their payments. These were "conditions precedent" in the contract, the facts which must exist before a duty of performance of a promise arises. *Block 316 Garage, Ltd. v. Wortham & Van Liew,* 705 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The first question before the trial court was, were the Groschkes in default on their note? Black's Law Dictionary defines default as:

An omission of that which ought to be done. Specifically, the omission or failure to perform a legal or contractual duty; to observe a promise or discharge an obligation, e.g. to pay interest or principal on a debt *when due;* or to perform an agreement.

BLACK'S LAW DICTIONARY 376 (5th ed. 1979) (emphasis added).

The evidence before the trial court included the deposition testimony of the Groschkes. In the deposition of Alminta B. Groschke, she was asked if she was aware the 1989 payment had not been made on January 16, and if she recalled being unable to make that payment. She replied affirmatively to both questions. She was then asked:

Q: And you're not disputing the fact that your six hundred seventy-one thousand dollar note is in default; is that correct?

A: Correct.

When asked if the 1989 principal payment had ever been made, she replied, "no." Mark A. Groschke's testimony at the injunction hearing was:

Q: Have you ever made the principal payment for January 16, 1989?

A: No.

Q: Did you make the January 16, 1990 payment?

A: No.

The requests for admissions, from the Gabriels to the Groschkes, asked:

Admission 10: Admit that the Gabriels did not receive the principal and interest payment due on January 16, 1989 on or before January 16, 1989.

Response: Admit

. . . .

Admission 14: Admit that the principal and interest due on January 16, 1990 was not paid by the Groschkes to the Gabriels on or before January 16, 1990.

Response: Admit.

The Groschkes allege the failure to execute the partial releases amounted to a material breach of their agreement because the conditions precedent had been met, they had tendered the Ingram note and the Gabriels refused it, and, therefore, they did not have to continue their performance, i.e. payment of the 1989 principal and any further payments. "Where one expects to insist upon performance of a contract, he must not breach it himself. He must perform his obligations under the agreement before he can insist upon the performance by the other party." *Wehmeyer v. Domingues*, 286 S.W.2d 194, 196 (Tex.Civ. App.—San Antonio 1956, no writ).

The Gabriels were under no obligation to execute the partial releases because the conditions precedent had not occurred. The Groschkes did not make the 1989 payment on time, did not pay the outstanding principal that was due on or before the date the 1990 payment was due, prior to offering the note to the Gabriels, and did not pay the 1990 payment. Therefore, they were in default at the time of the summary judgment hearing. The extension agreement gave them more time to make the payment, during which time the Gabriels agreed not to foreclose. The extension did not remove the fact the Groschkes were in default nor relieve them of the duty to make the 1989 principal payment or the 1990 payment. *See Wehmeyer*, 286 S.W.2d at 196. The trial court properly found, as a matter of law, the Gabriels were entitled to judgment on the promissory note and to foreclose on the property, as provided in the deed of trust and general warranty deed.

In addition, we note the Groschkes allowed without contest the foreclosure on the acreage out of the tract not in dispute. The foreclosure of the additional property was made possible only because of the default resulting from the nonpayment occurring January 16, 1990, at the latest, the same act that appellants claim is not a default relative to the property in issue.

The remaining grounds were also supported by the evidence before the trial court. There was no requirement for the Gabriels to accept the Ingram note in exchange for the execution of the partial releases, unless it had been fully and finally paid. The Groschkes wanted the amount they paid for the Ingram note credited to their debt, and had not marked the note "paid in full." The Groschkes' purchase of the Ingram note for $89,000, did not require the Gabriels to accept the note, rather than cash, for the 1989 principal payment of over $53,000. The Gabriels had four more years in which to pay out the $89,000 indebtedness on the Ingram note. They expected the $109,222.21 payments from the Groschkes to continue for those four years. The Groschkes' contention would require the Gabriels to give up over $400,000 in payments, in return for the Ingram note. The agreement between the parties does not mandate such a result.

During oral argument, the counsel for the Groschkes placed heavy reliance on the cases of *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518–519 (Tex.1968), and *Jostens, Inc. v. Gilcrease*, 798 S.W.2d 835, 838 (Tex.App.—Austin 1990, writ denied), for the contention that this court should look past the wording of the contract, to the intent of the parties "in the light of the surrounding circumstances," even though the wording of the contract is unambiguous. However, an analysis of those two cases reveals that the cases are distinguishable from the present case, and appellant's reliance is misplaced.

In *City of Pinehurst*, it was asserted by the appellant that the trial court had misconstrued the contract between the parties. The appellate court held the trial court had

correctly construed the contract, which was unambiguous. The supreme court agreed that the contract was unambiguous. The court laid out the general rules of the law of contracts:

> [W]here an unambiguous writing is entered into between the parties, the Court will give effect to the intention of the parties as expressed or apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls.... The standard interpretation ... is the meaning that would be attached ... by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the contract....

*City of Pinehurst*, 432 S.W.2d at 518. The court, quoting Williston on Contracts § 610 (1936), said, "though the courts say they are seeking the intention of the parties, ... it is not the real intent but the intent expressed or apparent in the writing which is sought." *Id.* The court held that "[w]here a question relating to the construction of a contract is presented ... we are to take the *wording* of the instrument, *consider the same in the light of the surrounding circumstances,* and then apply the pertinent rules of construction thereto and thus settle the meaning of the contract." *Id.* at 519 (emphasis added).

The Groschkes contend that *Pinehurst* allows them to present evidence of *their* understanding of the meaning of the contract. However, *Pinehurst* merely holds that parol evidence is admissible to explain any ambiguous terms in a contract. There is nothing in the present contract, express or implied, that shows any intention of the parties to have the Groschkes retire the Ingram note and obtain the partial releases. *Id.* The contract allows a partial release of six acres before the Gabriel note was paid in full, but only in the event the Ingram note was paid and the lien secured by that note was released in full, *and* the Groschkes were not in default on the Gabriel note.

In *Jostens, Inc. v. Gilcrease,* 798 S.W.2d 835 (Tex.App.—Austin 1990, writ denied), the court was concerned with interpreting a settlement contract. The court found it necessary to determine the legal effect of the settlement agreement, to resolve a subsequent dispute between the parties about ownership of certain "Super Bowl rings." The question was whether the terms of the settlement agreement covered 10 rings thought to be lost or stolen at the time the agreement was entered into by the parties. The rings were found shortly after entry of the agreed judgment. The court held that the mutual belief, at the time of contracting, that the rings were lost or stolen, was an operative fact essential to arriving at the meaning the parties intended in the contract, and therefore, the rings were outside the contract. *Id.* at 839.

The contract between the Gabriels and the Groschkes is not ambiguous in any sense. The partial release of the six acres was specifically covered by the contract, in all aspects. The Groschkes have not shown undisputed operative facts that would allow the introduction of parol evidence to explain the terms of the contract.

The Gabriels' summary judgment evidence included the deposition testimony of Alminta Groschke. She was asked if she had hired her attorney to purchase the Ingram note. She said he advised her to purchase the note. She was then asked if in fact she now owned the note, and if she intended to give it to the Gabriels as a gift. She replied she owned the note but did not intend to make a gift of the note to the Gabriels. She expected to either get the partial releases executed or the $89,000 she paid on the note. Her testimony was the same at the temporary injunction hearing. Her son, Mark Groschke testified that the Gabriels owed them the $89,000 if the releases were not signed, and the Groschkes did not intend to give the note to the Gabriels as a gift. The Ingram note was not, therefore, fully and finally paid because the Gabriels still owed at least $89,000 on it, regardless of who owned the note. The condition precedent was not met. The Gabriels had no duty to sign the partial release.

The Gabriels were not required to release the six acres until the liens securing the Ingram note had been fully and finally released. However, the Groschkes had not recorded the release of the liens, and indicated they would not do so until the partial releases had been signed. The conditions required to impose the duty of executing the partial releases on the Gabriels had not been satisfied.

In summary, the Groschkes did not make their 1989 payment, and then failed to make the 1989 principal payment, and the 1990 payment. We agree with the trial court that the Groschkes were in default on the note. The purchase of the Ingram note did not excuse the payment of the 1989 principal or the 1990 payment, any more than they would have been excused had a stranger bought the note. The Ingram note was not "paid in full in accordance with its terms and the terms of [the] $671,-123.20 Note, and the liens securing [the Ingram note] ... [had not] been fully and finally released without any additional consideration therefor." We overrule point of error one.

In the second point of error, the Groschkes assert the trial court erred in denying their motion for summary judgment. Where both sides file motions for summary judgment, the reviewing court must determine the propriety of the trial court's ruling on each motion; and, upon reversal, the reviewing court is authorized to render such judgment as the trial court should have rendered on all questions presented, including rendering judgment for the other movant. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

The Groschkes alleged they were entitled to summary judgment because they were not in default on the Gabriels note on January 10, 1990, when they tendered the Ingram note and requested the partial releases. However, the evidence before the trial court indicated they were in default on the note. The Groschkes contended they properly tendered the Ingram note, with the Ingram's executed release of lien, and that the Gabriels refusal to accept the note and sign the partial releases was a violation of their agreement, therefore the Groschkes were released from any further performance. The fact the Gabriels did not declare the note mature when the Groschkes could not make the 1989 payment, but instead granted an extension for payment of the principal, did not remove the fact that the failure to make the 1989 payment on time placed the Groschkes in default on the note. The Groschkes did not make the 1989 principal and 1990 payments. The Groschkes seem to say that their tender and demand relieved them of the obligation to pay the 1989 principal. They were not excused from making either of these payments by the purchase of the Ingram note. They were in default and the Gabriels had no duty to execute the partial releases.

The Groschkes contend the Ingram note was fully and finally paid and the liens securing the note were fully and finally released. However, as discussed above, the note was not paid and the liens were not released. Even if the note had been paid and the liens had been released, the Groschkes' default precluded the Gabriels being required to execute the partial releases. The trial court's denial of their motion for summary judgment was proper.

The Groschkes also assert on appeal that the severance was improper, their amended pleading precluded the rendering of the summary judgment, the judgment is not supported by the pleadings, and they are entitled to equitable relief because the property is their homestead. The Gabriels' answer is that these are inaccurate statements and, therefore, are without merit.

The trial court severed the causes of action for fraud and conspiracy from the actions for foreclosure and the injunction on the foreclosure. The Groschkes claim the fraud and conspiracy issues are so intertwined and joined with the injunction issues that severance was improper. *Straughan v. Houston Citizens Bank & Trust*, 580 S.W.2d 29, 33 (Tex.App.—Houston [1st Dist.] 1979, no writ). However, they do not indicate which facts or issues are so intertwined, nor cite any authority for the proposition that fraud and conspir-

acy claims contain the same facts and issues as the injunction or foreclosure suits.

■ Rule 41 of the Texas Rules of Civil Procedure provides, "[a]ny claim against a party may be severed and proceeded with separately." Tex.R.Civ.P. 41. This rule grants the trial court broad discretion in the matter of severance or consolidation of causes. *Guaranty Federal Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). The trial court's decision to grant a severance will not be reversed absent a showing of abuse of discretion. *Id.* A claim is properly severable when the controversy involves more than one cause of action; the claim severed is one that would be the proper subject of a lawsuit if independently asserted; and the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.*

The amended petition added the allegations that the Gabriels and their real estate agent made "material false misrepresentations ... or concealed material facts, or failed to disclose material facts to them, constituting common law fraud." The petition alleged the Gabriels and their agent conspired to defraud and deceive the Groschkes. The petition requested attorney's fees and exemplary damages in connection with these claims. It also alleged the Gabriels had tortiously interfered with the contractual relationship of the Groschkes and their attorney.

The fraud and conspiracy causes of action are still before the trial court. The facts surrounding the allegations differ from those involved in the present cause of action, and entitle the Groschkes to damages, if they win, not the property. The Gabriels are entitled to foreclose on the property. The Groschkes have shown no abuse of discretion in the trial court's severance, therefore, the summary judgment was properly entered as a final judgment.

■ The Groschkes assert the judgment was improper because it ordered the injunction bond to be paid to the Gabriels, as part of the payment of attorney's fees, and ordered the Gabriels release the money they paid into an escrow account on the Ingram note, to the Groschkes, without either side pleading for such relief. However, once the trial court determined the Groschkes to be the owners of the Ingram note, the money in the escrow account belonged to them, therefore the trial court ordered results in accordance with the issues it had decided.

■ On the bond issue, the Gabriels reply that the request for the bond money has been made but no payment has been made; and the judgment is not against the sureties or the bond, therefore the complaint is without merit. However, at the end of the trial on the merits, the trial court denied the permanent injunction and dissolved the temporary injunction. The trial court ordered the bond on the temporary injunction be paid to the Gabriels as part of their attorney's fees. The judgment for the Gabriels was for the foreclosure on the deed of trust, general warranty deed, and vender's lien on the real estate. A suit for damages on the issuance of a temporary injunction is another matter. *Lawyers Surety Corp. v. Sevier*, 342 S.W.2d 604, 606 (Tex.Civ.App.—Dallas 1961, no writ). An obligee can only recover against a surety on a temporary injunction bond after the dissolution of the wrongful injunction, and then only for the damages resulting directly from the issuance of the temporary injunction, not the original debt of the principal. *Id.* The trial court apparently determined that part of the Gabriels' attorney's fees were the damages resulting directly from the issuance of the temporary injunction. The Groschkes have shown us no abuse of discretion by the trial court.

The Groschkes' final allegation is that to allow the Gabriels to foreclose would be so unjust as to invoke equitable considerations against it. However, all the claims and issues raised here are still before the trial court in the fraud and conspiracy allegations, and the issues are not properly before us.

The judgment is affirmed. The disposition of this appeal makes the application for temporary injunction on foreclosure moot. All temporary relief previously

granted in this cause is lifted as of November 30, 1991.