HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellant,

v.

GLENBROOK PATIOHOME OWNERS ASSOCIATION, Appellee.

No. 01–93–00968–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 13, 1996.

Rehearing Overruled July 2, 1996.

Robert J. Montgomery, Houston, for Appellant.

Bruce D. Mosier, Houston, for Appellee.

Before HUTSON–DUNN, ANDELL and DUGGAN *, JJ.

## OPINION ON MOTION FOR REHEARING

HUTSON–DUNN, Justice.

Appellant has made a motion for en banc consideration of its motion for rehearing. We deny appellant's motion for rehearing, however we withdraw our original opinion and issue this one in its stead.

In this case, the trial court ruled that the appellant, Harris County Flood Control District (the district), was subject to covenants and restrictions that imposed a lien for unpaid assessment fees upon patiohomes that the district purchased. In six points of error, the district contends it is not liable for the unpaid assessments, or alternatively, the amount of its liability should be reduced. We reverse and remand this case for trial.

### I. Summary of Facts

In February 1973, Crane–Maier & Associates, Inc., filed a declaration of covenants, conditions, and restrictions in the deed records of Harris County for real property that Crane–Maier owned. The property burdened by the declaration was known as "Glenbrook Townhouses" and "Glenbrook Patiohomes."

The filed declaration contained the following provisions: All properties described in the recorded plat were held, sold, and conveyed subject to the restrictions contained in the declaration, and these restrictions would run with the land and bind the successors of any party who acquired any interest in the properties. Glenbrook Patiohome Owner's Association (Glenbrook), a non-profit corpo-

* Justice Duggan, who retired on December 31, 1994, sat for oral argument, which occurred prior to that date. He did not, however, participate in the determination of the appeal, including rehearing.

ration, was created and vested with the ownership of the common area of the patiohomes. Glenbrook was also empowered with the authority to manage and maintain the property and charged with the duty of enforcing the covenants and restrictions. Each owner of a patiohome automatically became a member of Glenbrook and owned an easement in the common area that was appurtenant to the title of his unit. This easement was delegable to the owner's family members, tenants, or contract purchasers who resided on the property.

Article four of the declaration contained a covenant for maintenance assessments. This covenant authorized Glenbrook to collect assessments for the promotion of enumerated purposes, such as: (1) the promotion of the residents' welfare; (2) the provision of water and sewer service for the residents and common area: (3) the maintenance of the common area and patiohomes; (4) blanket property insurance to insure the buildings and structures in the common area as well as the buildings of which each owner's residence was a part; and (5) comprehensive public liability insurance insuring the association from liability in connection with the common areas.

By accepting a deed to the unit, an owner was deemed to covenant and agree to pay the association annual assessments as well as special assessments for capital improvements. Further, the assessments, interest, costs, and attorney's fees were deemed a personal obligation of the owner at the time the assessment came due as well as a continuing lien on the property against which the assessment was made. The declaration gave Glenbrook authority to collect the assessments as follows:

> The Association [Glenbrook] may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien against the property. Each such Owner, by his acceptance of a deed to a Lot, hereby expressly vests in the Association, or its agents, the right and power to bring all actions against such Owner personally for the collection of such charges as a debt and to enforce the aforesaid lien by all methods available for the enforcement of such liens, including judicial foreclosure by an action brought in the name of the Association in a like manner as a mortgage or deed of trust lien on real property, and such Owner hereby expressly grants to the Association a power of sale in connection with said lien. The lien provided for in this section shall be in favor of the Association and shall be for the benefit of all other Lot owners. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

Between July 1986 and February 1987, the district purchased 20 patiohomes in two buildings from their individual owners for the purpose of widening and straightening Sims Bayou. The parties stipulated that the district did not exercise its power of eminent domain to acquire any of the properties or any of the appurtenant rights or obligations. Nevertheless, the district refused to pay all assessments that accrued against the individual patiohomes after the date that it purchased them.

After learning in March 1988 that the district planned to destroy the 20 patiohomes, Glenbrook filed suit on the lien and requested the following relief: (1) a declaratory judgment that Glenbrook owned valid liens against the patiohomes that the district purchased; (2) judgment against the district in the amount of the unpaid assessments plus interest; and (3) injunctive relief preventing the demolition of the patiohomes. The trial court granted a temporary restraining order that prohibited the district from destroying the patiohomes.

The district filed a "cross-action and counter-claim" in the fall of 1988 against Glenbrook and the individual patiohome owners to condemn a portion of the common area in order to facilitate the construction and development of the Sims Bayou watershed. The district sought to condemn part of the common area permanently and another part as a temporary construction easement. The court entered an agreed order that granted the district immediate possession of the part taken and of the temporary construction easement. As part of the agreed order, the district was authorized to remove the 20

patiohomes purchased from the individual owners as well as the improvements on the portion of the common area that the district had condemned.

Glenbrook amended its pleadings on May 16, 1989, after the 20 patiohomes were destroyed, to delete its claim for injunctive relief. Glenbrook's amended petition sought recovery of the unpaid assessment fees based upon two theories: (1) enforcement of its lien against the 20 patiohomes; and (2) a claim for inverse condemnation of the unpaid assessment fees.

The case went to trial in February 1992. In a pretrial stipulations conference, the district argued to the court that, as a matter of law, it was not liable to pay the assessment fees that accrued after it purchased the patiohomes. Alternatively, if the trial court found that the right to collect the assessments was a property right subject to condemnation, the district filed a trial amendment pursuant to TEX.PROP.CODE ANN. § 21.017 (Vernon 1984) that sought to condemn all of the rights and privileges that the declaration of covenants, conditions, and restrictions conferred on Glenbrook in relation to the 20 lots that the district purchased. The court ruled that the district was liable for the assessments that accrued from the date of purchase to the date of the trial amendment, and additionally, the capitalized value of the right to collect assessments in the future.

At the close of Glenbrook's evidence, the district moved for an instructed verdict and again argued that, as a matter of law, it was not liable to pay the assessment fees that accrued up to the trial amendment. The trial court denied this motion.

After the district submitted its evidence and before the charge was submitted to the jury, the court granted Glenbrook's motion for instructed verdict for $145,100, that was the amount of assessment fees that both parties stipulated had accrued up to the district's trial amendment. Additionally, the court submitted an issue to the jury as to whether the district's condemnation of a portion of the common area in the fall of 1988 resulted in any diminution in the market value of Glenbrook's remainder. Although the court did not submit Glenbrook's orally requested instruction that would have told the jury to include in its answer the value of the right to collect future maintenance fees that was allegedly taken by the district's trial amendment in February 1992, it gave Glenbrook permission to argue the effect that the diminished assessment base would have on the value of its remainder. The jury found that Glenbrook's remainder suffered no damage. After the court rendered judgment on Glenbrook's award representing the full amount of the unpaid assessment fees up to the date of the trial amendment, the district submitted a motion for new trial and argued it was not liable for these fees. The court overruled the motion.

The court rendered judgment that Glenbrook recover the stipulated amount of $145,100 from the district. This amount represented the unpaid assessment fees that allegedly accrued against the 20 patiohomes between the date the district purchased the patiohomes and the date it filed its trial amendment condemning Glenbrook's rights and privileges under the covenants.

## II. Analysis

In its first four points of error, the district argues the trial court erred in ruling that the district was liable to pay the assessment fees that purportedly accrued against the purchased patiohomes from the dates of purchase until the trial amendment. The district argues that it is not subject to the filed declaration of covenants and restrictions.

■ In Texas, there are four requirements for a covenant to run with the land: (1) it must touch and concern the land; (2) it must specifically bind the parties and their assigns: (3) the original parties must intend that the covenant run with the land; and (4) the successor to the burden must have notice. *Inwood N. Homeowners' Ass'n. v. Harris*, 736 S.W.2d 632, 635 (Tex.1987); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910–11 (Tex.1982).

■ We hold that the covenants contained in the declaration in this case ran with the patiohomes that the district purchased. A covenant to pay maintenance assessments

for the purpose of repairing and improving the common areas and recreational facilities touches and concerns the land. *Inwood*, 736 S.W.2d at 635. Further, the declaration filed by Crane–Maier explicitly bound purchasers and their assigns and evidenced an intent that the restrictions run with the land. Finally, as noted, the record indicates that Crane–Maier filed the declaration in the Harris County deed records. A purchaser is charged with knowledge of the provisions and contents of recorded instruments affecting his title. *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex.1984).

We must now determine the relationship between the district and Glenbrook under the covenants that ran with the 20 patio-homes that the district purchased. This depends upon several issues. First and most importantly, we must decide whether the right to collect assessment fees and the lien for enforcing that right are property rights in Texas. This is of vital importance because the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. CONST. amend. V. Further, the Texas Constitution provides that no person's property shall be taken, damaged, or destroyed for public use without adequate compensation to the owner, unless by consent of the owner. TEX. CONST. art. 1, § 17. If either the right to collect assessment fees or the lien are property rights, the derivative issues that we must address are: (1) who owns the rights; (2) whether the rights are extinguished when the government purchases property subject to the rights for a public purpose without actually condemning the property; and (3) whether the rights are compensable.

### A. Property Rights

The district argues the trial court erred by awarding Glenbrook any damages because the rights created by the declaration of covenants, conditions, and restrictions are not property rights. The district relies on three cases to support its contention. *See Farmer v. Thompson*, 289 S.W.2d 351 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n.r.e.); *City of River Oaks v. Moore*, 272 S.W.2d 389 (Tex.Civ.App.—Fort Worth 1954, writ ref'd

n.r.e.); *City of Houston v. Wynne*, 279 S.W. 916 (Tex.Civ.App.—Galveston), *writ ref'd per curiam*, 115 Tex. 255, 281 S.W. 544 (1926).

In *Wynne*, the City of Houston condemned land in a subdivision subject to a recorded plat that contained restrictions that each parcel in the subdivision could be developed only for residences. 279 S.W.2d at 917–18. Nevertheless, the City planned to use the purchased land for the purpose of building a fire station. *Id.* at 917. The appellants filed suit against the City, requesting an injunction on the basis that, because of the restrictive covenants, they owned a property interest in the land purchased by the City and had not been properly joined in the condemnation proceeding. *Id.* at 916. On appeal, this Court reversed the trial court's judgment and dissolved the injunction on the basis that the appellants had no property rights in the condemned property. *Id.* at 919–20. Further, we held that the restrictions, insofar as they sought to restrict or impair the City's right to condemn, were void and against public policy. *Id.* at 920. However, we stated in dicta that, if the City had erected an objectionable building that damaged the property of the appellants, they would have a cause of action to recover damages for the injuries sustained regardless of whether done in violation of the restrictions. *Id.* at 919. In *Farmer* and *Moore*, the Fort Worth Court of Appeals, relying on *Wynne*, stated that restrictive covenants are not binding on the government, and they do not militate against its power to take property subject to the covenants for a proper public use. *Farmer*, 289 S.W.2d at 354; *Moore*, 272 S.W.2d at 389–90.

The Supreme Court of Texas dealt with a similar issue in *State v. Clark*, 161 Tex. 10, 336 S.W.2d 612, 615 (1960). In that case, the grantors dedicated land to the City of Corpus Christi for public park purposes, and B.F. Clark purchased property next to the dedicated land in reliance upon the dedication. *Id.* at 613–14. In anticipation of plans to widen and improve a state highway, the City conveyed to the State all of its interest in the dedicated park area. *Id.* at 614. The dedicated property was used as a part of the

right of way to construct an elevated approach to a high level bridge over the Corpus Christi ship channel. *Id.* at 613. Clark brought suit for damages to his land caused by the use of the parkway for highway purposes. *Id.* The supreme court held that Clark had a cause of action for damages to his land resulting from the diversion of the parkway because the property was dedicated by private parties to the City for public park purposes, and Clark purchased his property in reliance on the dedication. *Id.* at 614. The court held that the measure of Clark's damages was the "diminishment in value of his property caused by the diversion of the parkway to that portion of the elevated structure resting upon the parkway." *Id.* at 618. The court stated that *Wynne* was inapplicable because it dealt with negative rather than affirmative rights. *Id.* at 616.

We conclude that neither *Wynne, Moore,* nor *Farmer* are helpful to this case because, at the time these cases were decided, real covenants had not been recognized in Texas as a property interest. In *City of Houston v. McCarthy,* this Court characterized a restrictive covenant as an interest in real estate that must be compensated if damaged or extinguished in a condemnation proceeding. 464 S.W.2d 381, 387 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In that case, the appellees conveyed to the Harris County Flood Control District a portion of a tract of land upon which they resided. *Id.* at 382. The deed contained a restriction that, if the district built any structure upon the surface of the property conveyed, such property would automatically revert back to the appellees, their heirs, and assigns. *Id.* at 382–83.

Subsequent to this conveyance, the City of Houston condemned an easement over part of the tract owned by the flood control district for highway purposes and built a bridge on the tract without joining the appellees in the condemnation suit. *Id.* at 383, 385. The City later filed a second condemnation suit to acquire the appellees' reversionary interest in this tract. *Id.* at 383. On appeal from that suit, this Court held that the value of the appellees' reversionary interest was nominal because there was no indication that it would ever be triggered. *Id.* at 384. However, we also characterized the provision that the reversion could be enforced by subsequent owners of the property as a negative easement and an interest in real estate that was appurtenant to the appellees' entire tract during the life of the easement. *Id.* at 386. Thus, we held that the appellees were entitled to compensation for the damage sustained by the acquisition of their reversionary interest for highway purposes. *Id.* We held that the proper measure of damages was the difference in the fair market value of the dominant estate immediately before and immediately after the taking. *Id.*

In *Leeco Gas & Oil Co. v. Nueces County,* the supreme court, relying in part on *McCarthy,* characterized a reversionary interest as an interest in property for which the landowner must be compensated in a condemnation proceeding. 736 S.W.2d 629, 630–32 (Tex.1987).[1] One week later, the court found in *Inwood,* that the right to collect assessment fees was superior to, and worthy of protection against the homestead claim.[2] 736 S.W.2d at 636–37. The court held a homeowner's association was entitled to foreclose

**1.** In *Leeco,* the County received a gift of beachfront property for use as a public park. *Id.* at 630. The grantor retained a reversionary interest in the deed whereby the County would keep the property so long as it constructed and maintained a public park on the property. *Id.* The County initiated condemnation proceedings so that it could consider future plans inconsistent with the deed restrictions. *Id.* at 630–31. The trial court, relying upon *McCarthy,* held that the grantor was only entitled to nominal damages because there was no evidence at the time of the condemnation that the restrictive covenant would ever be broken. *Id.* The supreme court disagreed and held that the grantor was entitled to compensation in the amount by which the value of the unrestricted fee exceeded the value

of the restricted fee. *Id.* at 631–32. The court distinguished *McCarthy* on the ground that it involved a situation where the government condemned the entire fee as opposed to just a reversionary interest. *Id.* at 631. The court did not comment on the portion of our holding in *McCarthy* that the grantor was entitled to compensation on the basis that the reverter that was extinguished was also a negative easement.

**2.** We note the court stated the specific issue before the court was "whether the homestead laws of Texas protect the homeowners against foreclosure for their failure to pay the assessments." 736 S.W.2d at 633.

on the houses of owners who were delinquent in their assessment fee payments. *Id.* at 636–37. In support of its holding, the court characterized as a property interest the duty of a landowner to pay assessment fees to a community association pursuant to a covenant running with the land. *Id.* at 636. Specifically, the court stated:

> A homestead right in real property cannot rise any higher than the right, title, or interest acquired by the homestead claimant. A homestead may attach to an interest less than an unqualified fee simple title. A homestead may attach to any possessory interest, subject to the inherent characteristics and limitations of the right, title or interest in the property. The homestead, however, will not operate to circumvent an inherent characteristic of the property acquired. *The concept of community association and mandatory membership is an inherent property interest. The declaration defines the rights and obligations of property ownership. The mutual and reciprocal obligation undertaken by all purchasers ... creates an inherent property interest possessed by each purchaser. The obligation to pay association dues and the corresponding right to demand that maximum services be provided within the association's budget are characteristics of that property interest. Moreover, the right to require that all property owners pay assessment fees is an inherent property right.* That no owner has to pay more than a pro rata share is an essential characteristic of the property interest.
>
> We see no distinction in pro rata fee simple ownership of common elements and in pro rata common ownership in an association, mandated by the declaration, which owns the common elements.

*Inwood,* 736 S.W.2d at 636 (citations omitted) (emphasis added).

■ In light of *Inwood* and *McCarthy* and the declaration of covenants, conditions, and restrictions in this case, we hold that the right to require that all property owners pay assessment fees is an inherent property right owned by the remaining patiohome owners, resting in the control of and right of enforcement by Glenbrook. However, the lien created by the declaration is not a property right. It is well settled in Texas that a lien is not itself property, but is a right to have satisfaction out of property to secure payment of a debt. *Migura v. Dukes,* 770 S.W.2d 568, 569 (Tex.1989). In other words, a lien is merely an enforcement mechanism for securing payment.

## B. Date of Extinguishment

■ We now consider the date on which the assessment fee rights incident to the 20 lots in question were extinguished. As noted, the parties stipulated that the district did not exercise its power of eminent domain to acquire the lots. In our view, this stipulation is of no legal significance. A governmental entity cannot initiate condemnation proceedings until it files a petition in the court that states that the entity and the property owner are unable to agree on the amount of damages. TEX.PROP.CODE ANN. § 21.012(a), (b) (Vernon 1984). In the present case, the district purchased the 20 lots in question for a public use between July 1986 and February 1987. The fact that the district was able to purchase the patiohomes without resorting to condemnation should have no bearing on the outcome of this case. Although the district did not attempt to condemn Glenbrook's assessment fee right until the trial amendment in February 1992, Glenbrook's rights were actually extinguished between July 1986 and February 1987, when the district purchased the individual patiohomes, took possession of the patiohomes, and refused to pay the maintenance fees that purportedly accrued against the patiohomes after it purchased them. A taking is an actual physical invasion or an appropriation of property. *Murray v. Devco, Ltd.,* 731 S.W.2d 555, 557 (Tex.1987). This includes an appropriation of the land, or of some interest or estate in it, by actual physical possession. *McCarthy,* 464 S.W.2d at 386. A taking is complete when the owner is prejudiced and the status quo cannot be restored. *Murray,* 731 S.W.2d at 557. A landowner is prejudiced where the land is physically possessed and used by the condemnor. *Id.*

■ When the district did not compensate Glenbrook for its assessment rights

upon purchasing the 20 patiohomes in question and refused to pay the assessment fees, Glenbrook's remedy was to file a suit for inverse condemnation as it did in this case. Inverse condemnation is a proceeding that a property owner brings for compensation when the government takes his property for public use without process or without proper condemnation proceedings. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971). Since the district extinguished Glenbrook's assessment fee rights when it purchased the 20 patiohomes and refused to pay the assessment fees, we conclude the trial court erred by rendering judgment in Glenbrook's favor using as the measure of damages the assessment fees that allegedly accrued between the date the district purchased the patiohomes and the date it filed the trial amendment.[3]

### C. Compensability

■ While Glenbrook's right to collect assessment fees was a property right that was extinguished when the 20 lots were purchased, the district asserts several reasons that Glenbrook is not entitled to recover damages for the loss of this right. The district first argues that Glenbrook's recovery of assessment fees pursuant to its lien constitutes community damages that are thereby not compensable. It is well settled in eminent domain law that, when part of a tract of real property is condemned, the owner of the remaining portion cannot recover for damages that are common to other property in the same community or section. *State v. Schmidt*, 867 S.W.2d 769, 779–81 (Tex.1993); *Olson v. Harris County*, 807 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1990, writ denied); TEX.PROP.CODE ANN. § 21.042(c), (d) (Vernon 1984). It is the nature of the injury that is the critical factor when determining whether the injury is community or special. Damage to a landowner's property is not deemed community merely because adjacent landowners suffer the same damage to their properties. *Schmidt*, 867 S.W.2d at 781. When the government takes a servient estate that is burdened by an intangible property interest appurtenant to an adjacent dominant estate, the dominant estate owner's property interest in the servient estate is extinguished. *See McCarthy*, 464 S.W.2d at 386–87 (op. and op. on reh'g) (dominant estate owner's negative easement in servient estate was damaged and extinguished when city took easement over servient estate and constructed a bridge in violation of restrictive covenant that had been created for benefit of dominant estate). Although the value of the property interest can only be determined by examining the effect of its absence on the dominant estate, we conclude this does not render the nature of the injury as community rather than special. Further, the injury is not rendered community merely because it is sustained by several individuals. *See Schmidt*, 867 S.W.2d at 781 (injury to several landowners on same street is not community simply because they all suffer alike).

■ In this case the loss of assessment fees, even though it affects a total community, are special in nature because the loss could cause injury to the assessment base which in turn would cause a diminution in value of the homeowners' property interest. Therefore, we hold Glenbrook's losses are classified as special rather than community in nature. The district argues it will be unduly burdened if required to condemn assessment fees because it will be required to join the owner of each individual lot burdened by the

3. Glenbrook cites section 270.001 of the Local Government Code to support its position that the district was liable for the assessment fees incident to the 20 patiohomes until the district expressly condemned the right to collect the fees. Section 270.001 provides:

A deed, grant, or conveyance that is made ... to a county ... vests in the county the right, title, interest, and estate that the grantor had in the property at the time the instrument was executed and that the grantor intended to convey.

TEX.LOCAL GOV'T CODE ANN. § 270.001 (Vernon 1988). We recognize that the act of purchasing the 20 patiohomes could only vest the district with the interests that their individual owners had and intended to convey. However, the district's refusal to pay assessment fees after it purchased the 20 patiohomes constituted an exercise of its eminent domain powers over the remaining owners' property rights in the 20 patiohomes that the district purchased.

covenants in a suit to condemn any one lot for public purposes. *See Wynne,* 279 S.W. at 920. We disagree. In accordance with what happened in this case, a governmental entity may condemn an association's interest in assessment fees by joining the association in the condemnation proceeding without joining its individual members.

Finally, the district asserts it should not be subject to covenants running with the land because the power of eminent domain should not be thwarted by agreements between private parties. In considering this argument, we determine whether the right to collect assessment fees, although it is a property right, is compensable when the government takes a tract of land to which that right is incident. This is an issue of first impression in Texas. This Court has held that, when an intangible property right incident to a servient estate is damaged or extinguished, the owner of the appurtenant dominant estate is entitled to recover for the diminution in value to his estate. *See McCarthy,* 464 S.W.2d at 385–86. On the other hand, federal cases recognizing the right to collect assessment fees as a property right have reasoned that the entity owning the right should be able to recover for the diminution in value to its assessment base when the government condemns a tract of land subject to the assessment fees. *See, eg., United States v. 129.4 Acres of Land, More or Less,* 572 F.2d 1385, 1386 (9th Cir.1978); *Adaman Mutual Water Co. v. United States,* 278 F.2d 842, 846 (9th Cir.1960).

■ We hold that the trial court erred in rendering an instructed verdict in Glenbrook's favor for the full amount of assessment fees that accrued up to the date of the district's trial amendment. The court should have submitted an instruction to the jury that required it to determine the diminution in value, if any, to Glenbrook's assessment base caused by the extinguishment of its right to collect assessment fees by reason of the district's purchase of the 20 patiohomes between July 1986 and February 1987.

Both Glenbrook and the district presented conflicting evidence regarding the extent to which Glenbrook's assessment base was damaged by the purchase of the 20 patiohomes

and the district's refusal to pay the assessment fees. Glenbrook's expert witness, Charles Osenbaugh, testified that the present capitalized value of Glenbrook's right to collect future assessment fees was $247,091. Osenbaugh did not offset the decreased expenses that would result from fewer patiohomes, but he testified that he also did not factor fixed expenses and the increased expenses that would result from inflation. The district's expert witness, Albert Allen, testified that the present *net* value of Glenbrook's right to collect future assessments was $216,790. Allen testified that, in making his calculations, he took off $0.25 per square foot for each building that was purchased and destroyed. Allen made this deduction because Glenbrook was responsible for maintaining the exteriors of the patiohomes, and there were fewer patiohomes to maintain because the district purchased and destroyed 20 of them. However, Allen did not state why $0.25 per square foot was the proper deduction, nor did he make any additional deductions to account for the other expenditures listed in the declaration that would be reduced because of fewer patiohomes in the development.

We now consider the effect of the charge that the court submitted in this case. The district contends that it is not liable to pay Glenbrook compensation for the diminution in value to its assessment base because the jury determined that Glenbrook did not suffer a decrease in the value of its remainder from the extinguishment of its right to collect assessment fees. At the close of trial, the court submitted the following question to the jury:

> What do you find was the difference in the market value of the remaining 15.270 acres of land owned by Plaintiff and Cross–Defendants, immediately before and immediately after the condemnation by the Harris County Flood Control District on October 12, 1988, of the .260 (11,173 square feet) parcel of land, taking into consideration the purpose for which the .260 acre parcel of land was condemned?
>
> . . . .
>
> Answer in dollars and cents, if any.
> Answer: $0

Although the court allowed Glenbrook to argue in its closing the extent to which its assessment base had been damaged,[4] the question submitted to the jury only asked whether the district's condemnation of a portion of the common area in the fall of 1988 resulted in any diminution in the market value of Glenbrook's remainder. Because this question had nothing to do with the assessment fees incident to the 20 patiohomes, the jury's finding of $0 damages to the remainder was not a finding that Glenbrook's assessment base was not damaged by the district's purchase of the 20 patiohomes.

The court's charge as submitted to the jury did not instruct the jury to calculate the damage to Glenbrook's right to collect future assessment fees. Glenbrook objected to the charge because: (1) it did not instruct the jury on Glenbrook's right to collect maintenance fees in the future; and (2) it implied to the jury that the taking of this right occurred in October 1988. Glenbrook also read a requested instruction into the record that would have told the jury to include in its answer the value of the right to collect future maintenance fees that was taken by the district's trial amendment in February 1992.

A party does not preserve error for a court's failure to submit a definition or instruction unless he requests and tenders to the trial court a substantially correct instruction in writing. *Williams v. Southern Pacific Transp. Co.,* 804 S.W.2d 132, 140 (Tex. App.—Houston [1st Dist.] 1990, writ denied); Tex.R.Civ.P. 278. Glenbrook's requested instruction was not sufficient to preserve error because it was not submitted in writing. Further, the instruction was not substantially correct because it told the jury to calculate the damage to Glenbrook's assessment base from the date of the trial amendment. Therefore, we conclude that Glenbrook has waived its right to a new trial on the damage, if any, to its assessment base from the date that the district filed its trial amendment in February 1992. However, Glenbrook is still entitled to a new trial on the damage to its

assessment base, if any, between October 1988 and February 1992, which is the period of time included in the trial court's instructed verdict.

We overrule the district's first four points of error in which the district asserts it is exempt from paying any amount whatsoever because of its condemnation of the assessment fees incident to the 20 patiohomes that it purchased. However, we sustain these points of error to the extent the district contends the trial court erred by assessing damages based on the total amount of the assessment fees owed on the 20 patiohomes for the period between October 1988 and February 1992, rather than allowing the jury to determine, if any, the diminution in value of the assessment base.

### D. Whether the District is Exempt or Entitled to a Reduction Under the Terms of the Declaration

In its fifth point of error, the district argues it is exempt from the payment of assessment fees to Glenbrook by a provision in the declaration that states the following:

All properties dedicated to and accepted by a local public authority and all properties owned by a charitable or nonprofit organization exempt from taxation by the laws of the State of Texas shall be exempt from the assessments created herein. However, no land or improvements devoted to dwelling use shall be exempt from said assessments.

The district contends it is a "nonprofit organization exempt from taxation by the laws of the State of Texas." Further, it points to testimony by Glenbrook's manager that the 20 patiohomes were not used as dwellings between the time that the district purchased them and the time that they were demolished.

The rules of construction that govern the interpretation of contractual provisions are equally applicable in construing covenants and restrictions. *See Scoville v. SpringPark Homeowner's Ass'n,* 784 S.W.2d

---

4. The court reporter did not transcribe opening statements and closing arguments in this case. However, the trial court told Glenbrook's attorney at the charge conference that he could argue in his closing argument the extent to which Glenbrook's assessment base had been damaged by the district's purchase of the 20 patiohomes.

498, 502 (Tex.App.—Dallas 1990, writ denied). The intent of the parties must be discerned from the instrument as a whole. *Id.*; *Parker v. Delcoure*, 455 S.W.2d 339, 343 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

■ We conclude that the term "nonprofit organization" in the declaration was not intended to include a local public authority such as the district. If we interpreted the declaration as the district asserts, the first clause in the provision that "properties dedicated to and accepted by a local public authority ... shall be exempted from assessments" would be rendered unnecessary. When interpreting a contract, a court must examine and consider the entire instrument so that none of the provisions will be rendered meaningless. *Groschke v. Gabriel*, 824 S.W.2d 607, 611 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

We overrule the district's fifth point of error.

■ The district argues in its sixth and final point of error that the trial court erred in holding that the district was liable for 100% of the assessments that accrued after the date it purchased the 20 patiohomes. To support its argument, the district relies upon the "uniform rate of assessment" provision of the declaration, that provides as follows:

Both annual and special assessments shall be fixed at a uniform rate for all lots and may be collected on a monthly basis. Annual assessments shall be made in proportion to the full annual assessment for each Lot, based upon its state of *development* as of the first day of each month, in accordance with the following schedule *which is based upon an estimate of the expense said Lot shall be to the association, to wit:*

(a) Vacant lots .. 30%

(b) Residence under construction .. 40%

(c) Residence substantially completed, but unoccupied .. 65%

(d) Residence completed .. 100%

(e) Lots owned by Declarant for a term of 15 months from the date of conveyance of the Common Area to the Association .. NONE

(Emphasis added.) The uniform assessment provision is based upon the expense that any given lot shall be to Glenbrook based upon the state of the lot at the time of the assessment. Therefore, it would seem applicable to the facts of this case because the district's lots were vacant after their destruction. Further, the record indicates Glenbrook stopped maintaining the 20 patiohomes during the two-year period between the time the district purchased the patiohomes and the time it destroyed them. However, the provision on its face applies only to lots during *development.* Because the lots on which the 20 patiohomes sat were fully developed and occupied when the district purchased the 20 patiohomes, we conclude that the uniform assessment provision is inapplicable under the facts of this case.

We overrule the district's sixth point of error.

We reverse and remand this case for another trial to determine the amount, if any, of the diminution in value of Glenbrook's assessment base caused by the extinguishment of its rights to collect assessment fees by the district's purchase of the 20 patiohomes between October 1988 and February 1992.

The following justices voted to deny appellant's motion for rehearing en banc: Chief Justice SCHNEIDER, Justice COHEN, Justice HUTSON–DUNN, Justice WILSON, Justice HEDGES, Justice ANDELL, and Justice TAFT.

The following justices voted to grant appellant's motion for rehearing en banc: Justice MIRABAL and Justice O'CONNOR.

Justice MIRABAL dissents without opinion from the denial of appellant's motion for rehearing en banc.