73 S.W.3d 304 (2001)
The CITY OF HOUSTON, Appellant,
v.
NORTHWOOD MUNICIPAL UTILITY DISTRICT NO. 1 and its Bondholders, Claude Jinks, Malcolm Bailey, Robert R. Burchfield, Edward G. Rizk, Fred Hofhienz, Fred Rizk, Jean Stuart, Paul Philbin, and J. Craig Nelson, Appellees.
No. 01-01-00497-CV.
Court of Appeals of Texas, Houston (1st Dist.).
November 15, 2001.
Rehearing Overruled April 24, 2002.
*306 Bertrand L. Pourteau, II, Sr. Asst. City Atty., Judy K. Hatfield, Houston, for Appellant.
W. Allyn Hoaglund, Houston, for Appellee.
Panel consists of Justices MIRABAL, NUCHIA, and PRICE.[*]

*307 OPINION
MARGARET GARNER MIRABAL, Justice.
The City of Houston (the City) brings this interlocutory appeal[1] from the denial of two pleas to the jurisdiction asserted as to the claims of appellees, Northwood Municipal Utility District No. 1 and its bondholders.[2] We reverse and render judgment dismissing appellees' claims for want of jurisdiction.

BACKGROUND
In 1984, developers petitioned the City of Houston to create a municipal utility district comprised of 385.059 acres of land located within the City's limits and near the George Bush International Airport. On December 19, 1984, Houston City Council passed Ordinance 84-1954, which approved the petition and authorized the creation of Northwood Municipal Utility District No. 1 (the District).
In 1996, the District filed for bankruptcy. In May 1998, the bankruptcy court approved a plan of adjustment, which authorized the issuance of refunding bonds. The bonds were secured by a lien on the ad valorem taxes to be collected on the property located within the District.
On January 6, 1999, the City purchased approximately 112 acres of land located within the District for expanding the airport.[3] Although unclear who sold the 112 acres, it is undisputed that the District did not own the land sold. The land purchased by the City then became tax-exempt under article 11, section 9 of the Texas Constitution.
The District and its bondholders filed suit against the City for inverse condemnation and declaratory judgment alleging that the purchase of the 112 acres reduced the District's tax base by approximately 30%, which constituted a "taking" or "damaging" of the District's property in violation of article I, section 17 of the Texas Constitution. The District and the bondholders also brought a breach of contract claim against the City. In support of the breach of contract claim, appellees asserted that Ordinance 84-1954 constituted a contract between the District and the City. Appellees contend the City breached the contract by purchasing the 112 acres because they had relied on the City's representation that the District's tax base would be comprised of 385 acres. Appellees contend they made financial expenditures and commitments based on this representation.
The City filed two pleas to the jurisdictionone against the District and one against the bondholders. Following a hearing, the trial court denied both pleas to the jurisdiction.
In two issues, the City contends that the trial court erred in denying the pleas to the jurisdiction because: (1) the District and the bondholders lack standing to sue for inverse condemnation and declaratory judgment under article I, section 17 of the Texas Constitution, and (2) the trial court lacks subject matter jurisdiction over the breach of contract claim because it is the same claim as appellees' inverse condemnation *308 claim, or, alternatively, is barred by sovereign immunity.

STANDARD OF REVIEW
A plea to the jurisdiction is a dilatory plea challenging a trial court's authority to determine the subject-matter of the cause of action without defeating the merits of the case. See Bland I.S.D. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). Accordingly, while the underlying claims may form the context in which a plea to the jurisdiction is raised, the purpose of the plea is not to preview or delve into the merits of the case, but to establish a reason why the merits of the underlying claims should never be reached. Id. In a plea to the jurisdiction, a defendant contends that, even if all the allegations in a plaintiff's pleadings are true, there is an incurable jurisdictional defect that prevents the court from hearing the case on the merits. State v. Sledge, 36 S.W.3d 152, 155 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).
To determine whether jurisdiction exists, the court is not required to look solely at the pleadings, but may also consider evidence to prove the jurisdictional issues raised. Blue, 34 S.W.3d at 555. However, the court should confine itself to the evidence relevant to the jurisdictional issues. Id.
The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993). Whether a trial court has subject matter jurisdiction is a legal question reviewed under the de novo standard. TRST Corpus, Inc. v. Fin. Ctr., Inc., 9 S.W.3d 316, 320 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); see also Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998). The plea is granted only if the pleading, even after amendment, does not state a cause of action upon which to invoke the trial court's jurisdiction. See Bybee v. Fireman's Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910, 917 (1960). The pleading is liberally construed in favor of conferring jurisdiction. Tex. State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Tex. Workforce Comm'n, 16 S.W.3d 61, 65 (Tex.App.-Austin 2000, no pet.); see also Tex. Ass'n of Bus., 852 S.W.2d at 446.

DISCUSSION
A. Standing
In the City's first issue, we examine whether the District and the bondholders have standing to sue the City for inverse condemnation or declaratory relief under article I, section 17 of the Texas Constitution. It is a fundamental legal precept that for a court to have subject matter jurisdiction, the party bringing suit must have standing. Tex. Ass'n of Bus., 852 S.W.2d at 443. To establish standing, a party must show that (1) a real controversy exists between the parties, and (2) the controversy will actually be determined by the judicial relief sought. Id. at 446.
Article I, section 17 of the Texas Constitution states, "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made...." Tex. Const. art. I, § 17. To recover on an inverse condemnation claim, a plaintiff must establish that (1) the State or other governmental entity intentionally performed certain acts, (2) that resulted in the taking, damaging, or destruction of the owner's property, (3) for public use. See Lethu, Inc. v. City of Houston, 23 S.W.3d 482, 485 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); see also Steele v. City of Houston, 603 S.W.2d 786, 788-92 (Tex.1980).
*309 To establish standing for an article I, section 17 claim, appellees must have pled facts showing that the purchase of the 112 acres resulted in a "taking" or "damaging" of vested property rights. See State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State, 985 S.W.2d 646, 651-52 (Tex.App.-Austin 1999, pet. denied). The City contends that appellees lack standing to sue because the facts recited in appellees' petition do not establish that either the District or the bondholders have a vested property interest protected by article I, section 17.
In their first amended petition, appellees stated their inverse condemnation and declaratory judgment claims as follows:

INVERSE CONDEMNATION
11. The act of the City of Houston in acquiring 112.5755 acres of land within the Northwood District removed such property from the Northwood District's tax base and not only constitutes an unreasonable interference with the use and enjoyment of the property but is also an effort to decrease the cost of acquiring any additional Northwood Property[4] for a public use in the future. This action clearly constitutes an inverse condemnation of Northwood's Property for which it is entitled to compensation....
12. The act of the City of Houston in acquiring a substantial portion of the Northwood Property for a public use without any provision for compensation to Northwood is not only an unreasonable interference with the right to use and enjoy the property but constitutes "taking" or "damaging" of Northwood's Property without adequate or just compensation in violation of Article I § 17 of the Texas Constitution.

DECLARATORY JUDGMENT
13. Additionally, pursuant to Section 37.001, et. seq., of the Texas Civil Practice and Remedies Code (Uniform Declaratory Judgment Act), Plaintiffs hereby seek declaration from this Honorable Court that the actions of the City of Houston in acquiring 112.5755 acres of Northwood Property on January 6, 1999, constitutes [sic] a "taking" and/or "damaging" of Plaintiffs' property in violation of Article I § 17 of the Texas Constitution....
Appellees alleged in the first amended petition the following facts to support their claims:
 Through the passage of Ordinance 84-1954, the City agreed to the specific land that would be included in the municipal utility district.
 The City knew that any "taking" of land within the District would adversely affect the District and its tax base.
 The plan of readjustment approved by the bankruptcy court authorized the issuance of refunding bonds.
 The bondholders agreed to the refunding of bonds in the principal amount of approximately $3,995,000.
 To issue the refunding bonds authorized by the plan of readjustment, it was necessary for the District to comply with Ordinance 84-1954.
 On August 31, 1998, the City stated in writing that the District had complied with Ordinance 84-1954.
 The bankruptcy court's order presumed that the land included within the District would remain within the District as taxable property to provide *310 a sufficient and reasonable ad valorem tax base for the District.
 Neither the District nor the bondholders envisioned, or contemplated the removal of approximately 30% of its tax base when the City purchased the 112 acres.
 The District and the bondholders made substantial financial commitments over time and had expectations of receiving back their investments.
 The City's purchase of the 112 acres reduced the District's tax base by approximately 30%.
Reading the first amended petition broadly, appellees can be found to have alleged that the City has "taken" and "damaged" the appellees' property rights, as follows: (1) the right of the District to receive ad valorem tax revenues from the 112 acres purchased by the City; (2) the bondholder's right to a lien on the tax revenues; and (3) the District's right to operate a municipal utility district on the 385 acres that the City approved be included in the District.
1. Tax Revenues
Appellees' first amended petition suggests that the District has a property interest in the right to receive ad valorem taxes on the 112 acres acquired by the City. The District contends the tax revenue was "taken" by the City when it purchased the property. The District also appears to contend that the City's acquisition "damaged" its tax base because the purchase of the 112 acres diminished the property value of the property remaining in the District.
It is not surprising that most article I, section 17 plaintiffs are the fee owners of the property they claim was taken or damaged; thus, whether the plaintiff has a sufficient property interest is usually not at issue. Here, however, the District does not allege that it owns the land or any other recognized real property interest in the land located within the District.
A survey of Texas cases involving the issue of what constitutes "property" for purposes of article I, section 17 reveals that "property" has generally been found to be a "real property" interest such as fee simple title, a leasehold, or an easement. See, e.g., City of Laredo v. R. Vela Exxon, Inc., 966 S.W.2d 673, 679 (Tex.App.-San Antonio 1998, pet. denied) (holding lessee had standing to bring taking claim against city because as lessee it had compensable property interest); Houston Lighting & Power Co. v. State, 925 S.W.2d 312, 314 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (stating "[a]n oil pipe line easement is `property' within the constitutional provisions prohibiting the taking or damaging of property for public use without adequate compensation"). Appellees cite no authority, and we can find none, holding that the right to collect ad valorem taxes is a real property interest worthy of article I, section 17 protection.
In comparison, parties asserting property interests other than real property interests have been found to not have a compensable property interest for purposes of article I, section 17. See, e.g., Operating Contractors, 985 S.W.2d at 651-53 (concluding right of contractor to conduct emission testing program for State was not vested right for purposes of takings claim); Bates v. Tex. State Technical Coll., 983 S.W.2d 821, 826 n. 8 (Tex.App.-Waco 1999, pet. denied) (concluding "property" as found in article I, section 17 does not include individual's property interest in continued employment); R. Vela Exxon, 966 S.W.2d at 679 (holding shareholder did not have standing to assert takings claim because it did not have a property interest for which compensation would be owed under article I, section 17).
*311 The record indicates that the trial court relied on Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n in concluding that appellees have standing in this case. 933 S.W.2d 570 (Tex.App.-Houston [1st Dist.] 1996, writ denied). In Glenbrook, we held that a homeowners association's right to collect assessment fees is a vested property right. Id. at 577. The basis for our holding in Glenbrook is that the right to require all property owners pay assessment fees is an inherent property right derived from a restrictive covenant running with the land, which is owned by the remaining homeowners and enforced by the association. Id. Because the assessment runs with the land, a new homeowner takes title to his property subject to the restrictive covenant and is required to pay the fee regardless of his identity or status.
Glenbrook is distinguishable from this case for one major reason: a municipal utility district's right to collect ad valorem taxes cannot be characterized as a restrictive covenant or other property interest that runs with the land. Rather, obligations to pay, as well as exemptions from, ad valorem taxes are derived entirely from constitutional and statutory provisions. Whether a municipal utility district will receive ad valorem taxes on a particular property is linked to the status and character of the entity owning the land. See Tex-Air Helicopters, Inc. v. Appraisal Review Bd. of Galveston County, 940 S.W.2d 299, 301 (Tex.App.-Houston [14th Dist.] 1997), aff'd, 970 S.W.2d 530 (Tex.1998) (stating Texas Constitution authorizes legislature to provide for specific tax exemptions by statute with certain parameters). For example, religious and charitable organizations may be exempt from paying ad valorem taxes. See Tex. Tax Code Ann. §§ 11.18, 11.20 (Vernon Supp.2001). Thus, Glenbrook does not serve to support the District's argument that it has a vested property interest in the ad valorem tax revenues.
As stated above, a plaintiff asserting a claim under article I, section 17 must show that it has a "vested" property interest. As explained by the Texas Supreme Court in City of Dallas v. Trammell, a right claimed to fall under the protection of the Texas Constitution must be something more than a mere expectancy based upon an anticipated continuance of an existing law. 129 Tex. 150, 101 S.W.2d 1009, 1013-15 (1937). Here, because the District's right to collect ad valorem tax revenues is dependent on the characteristics and status of the entity owning the property, it is based merely on the expectancy that all future landowners in the District will be subject to paying ad valorem taxes. Although the City's Ordinance 84-1954 approved the specific 385 acres that the District requested to be included in the District, the ordinance does not guarantee or represent that the District will always receive taxes on the entirety of the property within the District. Thus, the District's right to receive ad valorem taxes is more in the nature of "qualified" property interest. See Tarrant County v. Ashmore, 635 S.W.2d 417, 422 (Tex.1982) (holding qualified interest that public officer has in his position is not "property" within sense of constitutional guarantees against governmental takings of property without compensation, and, therefore, absent recognizable property interest, justices of the peace and constables removed from office by redrafting of precinct boundary lines had no claim for salaries for unserved portion of their terms).
We conclude that the District's interest in receiving ad valorem tax revenues is not a vested property right for purposes of asserting a violation of article I, section 17 action of the Texas Constitution.
*312 2. Lien Interest
The vested property interest claimed by the bondholders is their lien interest in the tax revenues. A lien is not itself property, but is a right to have satisfaction out of property to secure payment of a debt. Glenbrook, 933 S.W.2d at 577. Appellees rely on Wynnewood Bank & Trust v. State for the proposition that lienholders are entitled to participate in condemnation proceedings. 767 S.W.2d 491 (Tex.App.-Dallas 1989, no writ). However, Wynnewood Bank is distinguishable from the instant case in that the lienholder in that case was a bank possessing a lien interest in real property. See id. at 493. Here, the bondholders are not asserting that they have a lien on real property; rather, they have a lien on the ad valorem taxes to be collected. Thus, the bondholders' rights to the tax revenues are derivative of the District's rights to receive taxes. Accordingly, the bondholders do not have a vested property right in the tax revenues for the same reasons stated above with regard to the District.
3. Franchise
The District's petition can also be construed to assert that, by purchasing the 112 acres, the City has "damaged" the District's right to operate a municipal utility district on the 385 acres approved by the City to be included in the District. On appeal, the District characterizes this right as a "franchise" or "permit." Appellees correctly assert that a franchise impresses its owner with vested rights. See Brazosport Sav. & Loan Ass'n v. Am. Sav. & Loan Ass'n, 161 Tex. 543, 342 S.W.2d 747, 750 (1961); Operating Contractors, 985 S.W.2d at 653. The District contends that the City violated the "franchise."
In its brief, the City argues that Ordinance 84-1954 did not grant the District a franchise. Although we cannot address the merits of this case, granting the District the right to operate a municipal utility district could be construed to be a franchise.[5]
The petition for the creation of the District, which was incorporated into Ordinance 84-1954, defined the services the District was permitted to provide as follows:
The general nature of the work proposed to be done by the District at the present time is the purchase, construction, acquisition, ownership, operation, repair, improvement and extension of a waterworks system, sanitary sewer system and drainage and storm water sewer system for domestic and commercial *313 purposes. The District may also finance one or more facilities designed or utilized to perform fire-fighting services and may purchase interests in land for the purpose of providing parks [sic] land to the extent authorized and permitted by law.
Appellees' first amended petition does not allege facts that show the City interfered with the rights acquired by the District as defined above. Instead, the petition focuses on the damage to the District's tax base. Although the District is entitled to receive ad valorem taxes, Ordinance 84-1954 does not guarantee the amount of taxes the District will receive, or the amount of property subject to taxation within the District. As discussed above, the District's expectation to collect tax revenues does not create a vested property right.
We hold that neither the District, nor the bondholders, have standing to assert claims pursuant to article I, section 17 of the Texas Constitution because they failed to plead facts showing that the City's purchase of the 112 acres resulted in a "taking" or "damaging" of a vested property right.
We sustain the City's issue one.
B. Sovereign Immunity
In issue two, the City contends that, with respect to appellees' contract claim, the trial court should have granted its pleas to the jurisdiction because it is immune from suit pursuant to the doctrine of sovereign immunity. Although the City did not raise sovereign immunity in the trial court, a governmental entity's immunity from suit is a jurisdictional issue that may be raised for the first time on appeal. See Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.1999). Immunity from liability, on the other hand, is an affirmative defense and must be pled or else it is waived. See id.
Sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State. Gen. Servs. v. Little-Tex. Insulation Co., Inc., 39 S.W.3d 591, 594 (Tex.2001). The State may consent to the suit by statute or by legislative resolution. Id. Without the requisite consent to sue given by the State, the trial court lacks subject matter jurisdiction unless the suit comes under specific statutory waiver laws. See Jones, 8 S.W.3d at 638. The burden is on the party suing the political subdivision to establish consent to suit by alleging either a statute or express legislative consent. Id.
Here, appellees fail to allege that they have received legislative permission to sue the City for breach of contract. However, dismissing an action for lack of subject matter jurisdiction is proper only when it is impossible for a plaintiff's petition to confer jurisdiction on the trial court. See TRST Corpus, 9 S.W.3d at 320. Appellees filed a petition and a first amended petition in which the factual allegations remain largely unchanged. In addition, they do not assert on appeal that the legislature has given permission to sue the City for breach of contract. From this, we conclude that appellees' petition cannot be amended to confer jurisdiction on the trial court related to appellees' breach of contract claim.
We sustain the City's issue two.

CONCLUSION
We reverse the trial court's orders denying the City's pleas to the jurisdiction and *314 render judgment dismissing appellees' claims for want of jurisdiction.
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2001).
[2] The bondholders are Claude Jinks, Malcolm Bailey, Robert R. Burchfield, Edward G. Rizk, Fred Hofhienz, Fred Rizk, Jean Stuart, Paul Philbin, and J. Craig Nelson.
[3] Although the City purchased the land, it is undisputed that the City could have used its power of eminent domain to acquire the property.
[4] "Northwood Property" was defined in the first amended petition to mean the 385 acres located within Northwood Municipal Utility District No. 1.
[5] A franchise is a special privilege conferred by government upon an individual or organization, which does not belong to the citizenry at large, and in which activity one otherwise could not engage without the franchise. City of Wichita Falls v. Kemp Hotel Operating Co., 162 S.W.2d 150, 153 (Tex.Civ.App.-Fort Worth), aff'd, 141 Tex. 90, 170 S.W.2d 217 (1942); State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State, 985 S.W.2d 646, 653 (Tex.App.-Austin 1999, pet. denied). However, not every grant of an exclusive privilege constitutes a franchise. Operating Contractors, 985 S.W.2d at 653; Johnson v. City of Austin, 674 S.W.2d 894, 897 (Tex.App.-Austin 1984, no writ). Franchises under Texas case law generally take the form of utilities, or other monopolies, created to further the public interest. See Tex. Power & Light v. City of Garland, 431 S.W.2d 511 (Tex.1968) (electric utility); Brazosport Sav. & Loan Ass'n v. Am. Sav. & Loan Ass'n, 161 Tex. 543, 342 S.W.2d 747 (1961) (savings and loan associations); City of Jacksonville v. Gen. Tel. Co., 538 S.W.2d 253 (Tex.Civ.App.-Tyler 1976, writ ref'd n.r.e.) (telephone utility). Moreover, there must exist a contract between grantor and grantee that is mutually binding and enforceable. City of Jacksonville, 538 S.W.2d at 255. Whether an instrument, ordinance, or contract amounts to a franchise depends largely upon the manner of its performance in compliance with its terms. See Kemp Hotel, 162 S.W.2d at 153.