

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00334-CV

———————————————

COVENANT CLEARINGHOUSE, LLC, Appellant

V.

CHRISTA J. FOSTER, Appellee

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. 21-8317-211

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

A property owner has invoked the procedure provided by Chapter 51 of the Government Code in an effort to have a "notice of claims" concerning her property declared fraudulent. But that procedure is generally reserved for challenges to documents that purport to create liens. The notice of claims does not purport to create a lien, and thus recourse through Chapter 51 is unavailable. We therefore reverse the trial court's order declaring the notice of claims to be fraudulent.

## I.    BACKGROUND

This suit began when appellee Christa J. Foster filed a motion to challenge an alleged lien on her property in Denton County. The motion alleged that in 2009, Robert and JoAnn Shelton had executed a declaration that created a restrictive covenant encumbering the property. The declaration of covenant provided that in the event the property was conveyed, a transfer fee of 1% of the total consideration for the sale could be collected from the seller. It further provided that a transfer fee, if not paid when due, would give rise to a lien on the property.

Foster alleged that in 2011, the Sheltons had executed and filed a "Termination of Declaration of Covenant" with the Denton County clerk. Foster alleged that this document terminated the restrictive covenant, "nullifying" the obligation to pay a transfer fee in the event of a property sale. Under the declaration of covenant, the Sheltons had the right to terminate the covenant, and the declaration specified how they were to effect the termination.

However, in 2021, appellant Covenant Clearinghouse, LLC recorded with the county clerk a notice of claims concerning the property. The notice of claims stated that the property "may be subject to an assessment of one percent (1%) of the sales price . . . payable in connection with transfers of title."

Foster explained that the goal of her motion was to challenge Covenant Clearinghouse's notice of claims using the procedure provided by Chapter 51 of the Government Code, which offers a mechanism designed to easily dispose of fraudulent documents that purport to create liens. She argued that the proof attached to her motion demonstrated that the notice of claims was presumptively fraudulent under the meaning of Chapter 51.

Attached to her motion were a string of emails in which JoAnn Shelton stated her belief that the termination documents that she and her husband had signed in 2011 "should still be binding." In the emails, JoAnn wrote that she had never heard of Covenant Clearinghouse, that she had never signed anything giving Covenant Clearinghouse a right to collect the transfer fees, and that Covenant Clearinghouse's claim was likely an illegal "scam." Also attached to the motion were the declaration of covenant, the termination documents, and the notice of claims.

Within days, the trial court rendered an ex parte order declaring that the notice of claims was invalid and did not give rise to a valid lien or claim. Covenant Clearinghouse appealed.

## II.  DISCUSSION

Covenant Clearinghouse argues that the trial court exceeded the permissible bounds of Chapter 51 when it declared the notice of claims to be fraudulent. Covenant Clearinghouse contends that the notice of claims did not satisfy the statutory test for what may be considered presumptively fraudulent under Chapter 51.

"The Texas Government Code provides an expedited proceeding for challenging a fraudulent lien or claim against real or personal property, the foundation of which is found in section 51.903." *In re Hai Quang La*, 415 S.W.3d 561, 564 (Tex. App.—Fort Worth 2013, pet. denied); *see* Tex. Gov't Code Ann. § 51.903. Section 51.903 was enacted as part of a statutory scheme to quickly identify and remove liens and encumbrances that are patently without basis in recognized law. *David Powers Homes, Inc. v. M.L. Rendleman Co., Inc.*, 355 S.W.3d 327, 338 (Tex. App.—Houston [1st Dist.] 2011, no pet.). That section allows a purported debtor to ask for a judicial determination of the legitimacy of a filed or recorded document or instrument purporting to create a lien or interest in real or personal property. *Hai Quang La*, 415 S.W.3d at 564. "A motion under that section requests the court to review the subject document and determine 'whether it should be accorded lien status.'" *Id.* at 564–65 (quoting Tex. Gov't Code Ann. § 51.903(a)). The trial court's finding may be made solely on a review of the documents attached to the motion for judicial review and without hearing testimony. *Id.* at 565. "The court's review may be made ex parte without delay or notice of any kind." *Id.* (quoting Tex. Gov't Code Ann. § 51.903(c)).

4

"[A] proceeding under section 51.903 is limited in scope." *Id.* "A trial court may only determine whether the subject document is fraudulent as defined by section 51.901(c)(2); it may not rule on any underlying claims of the parties involved." *Id.* The trial court also may not rule on any substantive evidentiary claim. *Tu Nguyen v. Bank of Am., N.A.*, 506 S.W.3d 620, 624 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). We review the trial court's ruling de novo. *In re Purported Lien or Claim Against 1124 N. Knowles Dr.*, No. 02-20-00246-CV, 2021 WL 1323429, at *2 (Tex. App.—Fort Worth Apr. 8, 2021, no pet.) (mem. op.).

For purposes of a Section 51.903 action, a document or instrument is presumed to be fraudulent if:

> (2)    the document or instrument *purports to create a lien or assert a claim* against real or personal property or an interest in real or personal property and:
>
> > (A)    is not a document or instrument provided for by the constitution or laws of this state or of the United States;
> >
> > (B)    is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person; or
> >
> > (C)    is not an equitable, constructive, or other lien imposed by a court with jurisdiction created or established under the constitution or laws of this state or of the United States.

Tex. Gov't Code Ann. § 51.901(c)(2) (emphasis added).

Again, for the procedure of Section 51.903 to be successfully invoked, the proceeding usually "must first involve a document or instrument that purports to create a lien or assert a claim against real or personal property or an interest in real or personal property." *Hai Quang La*, 415 S.W.3d at 566. For example, "[c]ourts have consistently struck down challenges to the assignment of mortgage documents brought pursuant to § 51.903, on the basis that an assignment or transfer does not create a lien." *Chau D. Ho-Huynh v. Bank of Am., N.A.*, No. CV G-14-69, 2014 WL 12599510, at *4 (S.D. Tex. Nov. 14, 2014) (collecting cases). Though these assignments related to liens generally, courts nonetheless held Chapter 51 inapplicable to them because an assignment "does not purport to create a lien or claim, it merely purports to transfer an existing deed of trust from one entity to another." *In re Campbell*, No. 03-11-00524-CV, 2012 WL 1811616, at *2 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.).

Likewise, in *Hai Quang La*, we rejected an attempt to dispose of a restrictive covenant through Chapter 51 procedure, reasoning that the restrictive covenant did not purport to create a lien and was thus beyond the statute's scope. 415 S.W.3d at 566–67. We reviewed possible definitions of the term "lien," drawing guidance both from Texas law—"a claim in property for the payment of a debt and includes a security interest"—and from Black's Law Dictionary—"a legal right or interest that a creditor has in another's property, lasting usually until a debt or duty that it secures is satisfied." *Id.* at 566 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 12.001(3) and *Lien*,

6

Black's Law Dictionary (9th ed. 2009)); *see also Harris Cnty. Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 577 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (op. on reh'g) (citing *Migura v. Dukes*, 770 S.W.2d 568, 569 (Tex. 1989)) ("[A] lien is not itself property[] but is a right to have satisfaction out of property to secure payment of a debt."). We held that the document did not meet these definitions because there was no lien-creating element to the restrictive covenant. *Hai Quang La*, 415 S.W.3d at 566.

Here, the document challenged is Covenant Clearinghouse's notice of claims. The initial question becomes whether this document purports to create a lien.[1] We hold that it does not.

Nothing about the 2021 notice of claims attempted to fashion a legal claim, right, or interest in Foster's property through which a debt or liability could be satisfied. Rather, the function of the notice of claims was purely to preserve an

---

[1]It should be noted that Covenant Clearinghouse has not offered a great deal of argument concerning this question. However, we believe that this inquiry is fairly included as a subsidiary question within the broader whole of Covenant Clearinghouse's issue on appeal, which concerns whether the statute's definition of presumptively fraudulent was satisfied—an essential part of that definition is the question of whether the document purports to create a lien or assert a claim. An issue statement "will be treated as covering every subsidiary question that is fairly included." *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020) (quoting Tex. R. App. P. 38.1(f)). We are reluctant to turn away claims based on waiver or lack of preservation. *Id.* at 213. This is because "appellate courts should reach the merits of an appeal whenever reasonably possible." *Id.* at 214 (quoting *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012)). We therefore proceed to address the merits of this subsidiary question. *See Ditta v. Conte*, 298 S.W.3d 187, 190 (Tex. 2009).

existing potential liability—the prospect of transfer fees—which had already been generated by the 2009 declaration of covenant. By law, Covenant Clearinghouse was required to file a document like the notice of claims to retain any ability to collect a transfer fee. In 2011, the Legislature amended the Texas Property Code to restrict the use of private transfer fees in real estate transactions. *Covenant Clearinghouse, LLC v. Kush & Krishna, LLC*, 607 S.W.3d 855, 856–57 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Under the amendments, private transfer fee obligations created on or after June 17, 2011 were void and unenforceable against a subsequent owner or subsequent purchaser of real property. *Id.* at 857 (citing Tex. Prop. Code Ann. § 5.202(a)). Any private transfer fee obligation created before that date was grandfathered in but was "subject to rather austere notice requirements." *Id.* Recipients of transfer fees were required to file notices with specified content in the real property records of each county in which the property is located. *Id.* (citing Tex. Prop. Code Ann. § 5.203(a)). Any person who was required to file the initial notice also had to refile the notice every three years thereafter. *Id.* (citing Tex. Prop. Code Ann. § 5.203(d)). Failure to meet these notice requirements would leave the transfer fee obligation void. *Id.* (citing Tex. Prop. Code Ann. § 5.203(f)).

Covenant Clearinghouse's notice of claims was intended to satisfy this triennial notice requirement, which tells us much about its function: it was designed to maintain the ability to collect a transfer fee, not to create a lien. That is, the role of the notice of claims was to preserve a potential liability, not to newly establish a

8

mechanism through which a liability could be satisfied, as a lien-creating instrument would do. *See Migura*, 770 S.W.2d at 569. Because the notice of claims did not purport to create a lien or assert a claim against property or property interests, Foster had no right to rely on Chapter 51 as a means to have that document declared fraudulent. Her recourse, if any, must be through another cause of action. *See, e.g., Tu Nguyen*, 506 S.W.3d at 625. We sustain Covenant Clearinghouse's first issue.

## III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 28, 2022